No. 26-4392

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,

*Appellee*

*v.*

THOMAS C. GOLDSTEIN,

*Appellant.*

On Appeal from the United States District Court
for the District of Maryland (No. 1:25-cr-00006-LKG)
The Honorable Lydia K. Griggsby

---

# OPPOSED MOTION FOR RELEASE PENDING APPEAL

---

Jonathan Kravis
LIU SHUR KRAVIS LLP
607 Fourteenth Street, NW
Suite 625
Washington, DC 20005
(202) 240-7100
jonathan.kravis@lskllp.com

Elizabeth B. Prelogar
Andrew D. Goldstein
Ephraim A. McDowell
Elias S. Kim
Jade Ford
COOLEY LLP
1299 Pennsylvania Ave., NW, Suite 700
Washington, DC 20004
(202) 842-7800
eprelogar@cooley.com

## TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1
ARGUMENT .......... 3
I. Goldstein's Appeal Will Raise Substantial Questions .......... 3
A. The District Court Allowed the Government to Pursue a Conviction Under Section 2 Without Instructing the Jury on Its Elements .......... 3
B. The District Court's Instructional Errors Raise Substantial Issues for Appeal .......... 9
1. Omitting the elements of Section 2 from the jury instructions violated due process. .......... 9
2. The district court violated Rule 30(b) by amending the jury instructions after closing arguments. .......... 16
II. Goldstein Does Not Pose A Flight Risk Or Danger To The Community .......... 18
A. Goldstein Lacks the Incentive or Ability to Flee .......... 18
B. Goldstein Is Not a Danger to the Community .......... 21
CONCLUSION .......... 22

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Boyde v. California*,
494 U.S. 370 (1990) .......... 10-14

*United States v. Ali*,
793 F. Supp. 2d 386 (D.D.C. 2011) .......... 19

*United States v. Edelman*,
No. 24-cr-239, 2024 WL 5093496 (D.D.C. Dec. 12, 2024) .......... 19, 21

*United States v. Edelman*,
No. 24-cr-239, 2025 WL 1725957 (D.D.C. June 20, 2025) .......... 18, 19, 21

*United States v. Gumbs*,
283 F.3d 128 (3d Cir. 2002) .......... 4

*United States v. Harris*,
346 F.2d 182 (4th Cir. 1965) .......... 9, 16

*United States v. Hastings*,
134 F.3d 235 (4th Cir. 1998) .......... 14

*United States v. Horton*,
921 F.2d 540 (4th Cir. 1990) .......... 3, 16-18

*United States v. Javice*,
No. 23-cr-251 (S.D.N.Y. Oct. 30, 2025) .......... 19, 21, 22

*United States v. Jinwright*,
No. 09-cr-067, 2010 WL 2926084 (W.D.N.C. July 23, 2010) .......... 22

*United States v. Lighty*,
616 F.3d 321 (4th Cir. 2010) .......... 11

*United States v. McComber*,
No. 21-cr-036, 2024 WL 4664630 (D. Md. Nov. 4, 2024) .......... 19, 22

*United States v. McDonnell*,
No. 15-4019 (4th Cir. Jan. 26, 2015) .......... 21

**TABLE OF AUTHORITIES**
(continued)

**Page**

*United States v. Mosby*,
143 F.4th 264 (4th Cir. 2025) .......... 6

*United States v. Odum*,
65 F.4th 714 (4th Cir. 2023) .......... 3, 9, 10, 17

*United States v. Polowichak*,
783 F.2d 410 (4th Cir. 1986) .......... 9

*United States v. Sanchez*,
995 F.2d 468 (3d Cir. 1993) .......... 19

*United States v. Steinhorn*,
927 F.2d 195 (4th Cir. 1991) .......... 2

*United States v. Winstead*,
708 F.2d 925 (4th Cir. 1983) .......... 3, 17

**Statutes and Regulations**

18 U.S.C.
§ 2 .......... 3
§ 2(a) .......... 3, 12
§ 2(b) .......... 3, 6, 7
§ 3143(a)(1) .......... 21
§ 3143(b) .......... 1, 2
§ 3143(b)(1) .......... 1

Fed. R. Crim. P.

30(b) .......... 16
33 .......... 14

## INTRODUCTION

Thomas C. Goldstein respectfully moves for release pending appeal pursuant to 18 U.S.C. § 3143(b). During Goldstein's trial for tax and mortgage fraud charges, the district court gave erroneous jury instructions that violated due process and crippled his defense. Absent this Court's intervention, Goldstein will begin serving a sentence that will no longer stand once this Court corrects the district court's errors—even though he poses no risk of flight or danger to the community. Federal law forbids that unjust result.

Goldstein satisfies the statutory criteria for release. Section 3143(b) provides that a court "shall order the release" of a defendant pending appeal if he demonstrates: (1) "by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community if released"; (2) that the appeal is not taken "for the purpose of delay"; and (3) that the appeal "raises a substantial question of law or fact." 18 U.S.C. § 3143(b)(1).

The first two factors are straightforward. The district court has never found that Goldstein poses a danger to the community. And although the district court expressed concern that Goldstein's international connections present some flight risk, it repeatedly concluded that conditions of release—including location monitoring and passport surrender—sufficiently mitigated that possibility. It therefore permitted Goldstein's release through sentencing, including after denial of

his post-trial motions. Nor is Goldstein appealing to delay; he is appealing because the district court committed serious errors that require a retrial on every count, and he plans to file his appellate briefs on an expedited timeline and oppose any extension request by the government.

The relevant dispute thus centers on the third factor. A "substantial question of law or fact" is "a 'close' question or one that very well could be decided the other way." *United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991) (per curiam) (citation omitted). Goldstein's appeal will raise at least two questions that require reversal—and at minimum qualify as "close." First, the jury instructions violated due process by inviting jurors to convict Goldstein of accessory liability without specifying the elements required by 18 U.S.C. § 2. Second, the district court violated Federal Rule of Criminal Procedure 30(b) by changing the relevant jury instructions after closing argument—stripping the defense of an opportunity to argue Goldstein's innocence under the instructions actually given to the jury. And because the amended jury instructions enabled wrongful conviction under 18 U.S.C. § 2 for every count, the court's instructional errors require a new trial across the board.

This motion thus presents a clear case for release. Allowing Goldstein to remain imprisoned while he seeks review of his fundamentally flawed trial—even though there is no risk he would flee or endanger the community—would effectuate a grave injustice. That is precisely what Section 3143(b) is designed to prevent.

# ARGUMENT

## I. GOLDSTEIN'S APPEAL WILL RAISE SUBSTANTIAL QUESTIONS

The district court violated due process by inviting jurors to convict Goldstein under Section 2 without instructing them on its elements. It also violated Rule 30(b) by substantively amending the instructions following closing argument. Each error prejudiced Goldstein—eliminating his ability to meaningfully argue his innocence to the jury—and creates, at minimum, a substantial question for appeal.

### A. The District Court Allowed the Government to Pursue a Conviction Under Section 2 Without Instructing the Jury on Its Elements

1. Federal law provides in 18 U.S.C. § 2 that a defendant may be convicted of two distinct forms of accessory liability: aiding and abetting, *id.* § 2(a), and "willfully caus[ing]" another to commit the offense, *id.* § 2(b). Due process requires that, to convict under Section 2(a), the jury must be instructed to find several elements that are not included in the statutory text: The jury must find a guilty principal; that the defendant had willful intent to commit the underlying offense; and that the defendant took an affirmative act in furtherance of the underlying offense. *See United States v. Horton*, 921 F.2d 540, 547 (4th Cir. 1990); *United States v. Winstead*, 708 F.2d 925, 927 (4th Cir. 1983); *United States v. Odum*, 65 F.4th 714, 721-22 (4th Cir. 2023). Similarly, to convict under Section 2(b), the jury must find that the defendant "willfully cause[d] an act" that would constitute the underlying

offense and had the intent required to commit the underlying offense. *United States v. Gumbs*, 283 F.3d 128, 132, 136 (3d Cir. 2002).

In January 2025, the government secured an indictment charging Goldstein with tax evasion, aiding or assisting in the filing of false tax returns, willful failure to pay taxes, and mortgage fraud. MA109. With respect to each offense, the indictment charged Goldstein with violating Section 2. *See* MA435-49.

The case went to trial in February 2026. In advance of trial, the government drafted the preliminary jury instructions, which reflected that it was pursuing a Section 2 theory for every charge. *See* MA502-03; MA527-31; MA541-42; MA557-61. The preliminary instructions for each separate category of offense specified that Goldstein was charged with both the substantive offense and accessory liability under Section 2. *See* MA608-09; MA613; MA615-16; MA619. In total, the instructions referenced or quoted the statutory language of Section 2 seven times. *See* MA608-09; MA613; MA615-16; MA619.

At the end of trial, the government vigorously argued that the final instructions should permit the jury to convict Goldstein under Section 2 for every charge. In its proposed final instructions, the government asserted that it had "introduced more than sufficient evidence to support an aiding and abetting instruction." MA684. And in an extended colloquy at the charge conference, the government emphasized that the instruction was "absolutely" justified because it had presented extensive

"testimony and evidence dating back to 2016" regarding the involvement of third parties in Goldstein's alleged offenses. MA961. On the tax charges, the government stressed that Goldstein "was reporting certain of his gambling income . . . through his accountant." MA961-62. And it claimed that there was "evidence that other people, including firm managers, helped him with these crimes." MA962. As to the mortgage charges, the government emphasized that Goldstein was "submitting these applications with someone else; namely, his wife." MA990.

The district court determined that the government had presented sufficient evidence to pursue at least a Section 2(a) theory and therefore agreed to instruct the jury that it could convict under that theory for each charge. The final instructions for each separate category of offense (hereinafter, the "Charging Instructions") were very similar to the equivalent preliminary instructions. Each specified that Goldstein was charged with both the substantive offense and also under Section 2. *See* MA55; MA56; MA61; MA64-65; MA71; MA75-76; MA78-79. Again, the instructions quoted the language of Section 2 seven times. *See* MA55; MA56; MA61; MA64-65; MA71; MA75-76; MA78-79.

The final instructions adopted at the charge conference also included further instruction—as required by due process—specifying the elements for convicting based on Section 2(a) (hereinafter, the "Accessory Elements instruction"). *See* MA766-68; MA1000-01. As the district court put it, the Accessory Elements

instruction "is needed and is appropriate" for a Section 2(a) charge. MA1001. Critically, this instruction permitted the jury to convict Goldstein only of aiding and abetting under Section 2(a), and not willfully causing the offense under Section 2(b). *See* MA1027-30. Indeed, the Court thrice revisited that instruction specifically to clarify that the jury could not convict on a Section 2(b) theory. *See* MA1027-30; MA1098-99; MA1214-15.

2. But after closing argument, the government changed its theory and led the district court to commit a serious error. Throughout trial, it became apparent that proving accessory liability was particularly important to the government's case on the mortgage fraud charges because of Goldstein's venue defense on those charges. Under *United States v. Mosby*, 143 F.4th 264 (4th Cir. 2025), venue exists on a charge of mortgage fraud in a district in which the defendant transmitted the false statement. *Id.* at 281-82. It is not sufficient that the defendant acting from outside the district caused someone to transmit the statement within the district.

For each mortgage fraud count, Goldstein presented evidence that he did not transmit the alleged false statement from the District of Maryland. For instance, on Count 15, travel records prepared and introduced by the government established that Goldstein was in the Virgin Islands when the relevant mortgage application was submitted to the lender. MA1184-85.

In response, the government abandoned its attempt to convict Goldstein directly of mortgage fraud on Count 15 and put on a rebuttal case advancing what the Court recognized was a "new theory": that Goldstein was guilty under Section 2 of causing his wife to submit the false applications from Maryland. MA16-17. But that theory had a major problem: the district court had barred the government from pursuing Section 2(b) liability. Nevertheless, in both its initial and rebuttal closing, the government asserted that Goldstein had willfully caused his wife to submit the applications. *See* MA1098-99; MA1214-15. The defense objected both times, arguing that the Accessory Elements instruction limited the jury to convicting only under a Section 2(a) aiding-and-abetting theory—not a Section 2(b) willfully-caused theory. *See* MA1098-99; MA1214-15. The district court stopped the government from pursuing that theory both times. *See* MA1098-99; MA1214-15. And the government did not dispute that the existing instructions barred it from relying on Section 2(b). *See* MA1098-99; MA1214-15.

So after closing arguments, the prosecution made—and the court granted—an extraordinary request: to *delete* the Accessory Elements instruction while retaining all other Section 2 language in the Charging Instructions. The government candidly explained that the purpose of this post-closing request was to eliminate the instruction limiting the jury to applying only Section 2(a), rather than Section 2(b) as well, insisting that "this is a § 2(b) case (in addition to (a))." MA1225. When the

defense objected that the government "wants to . . . tell the jury they can convict Mr. Goldstein of aiding and abetting and then remove the instruction explaining to them what they would have to find to do that," MA8, the government did not disavow seeking a conviction under Section 2. Instead, the government argued that the language describing the elements of Section 2(a) "should come out, and *the other aiding and abetting language should stay in*," MA8 (emphasis added), because "the statute is sufficiently clear" and "[i]t's already cited in the instructions, and so there is no reason to have a separate standalone," MA10. The district court agreed with the government.

The effect of that decision was to retain the instructions permitting the jury to convict under Section 2 on *every* count, but without any instructions on the multiple elements not specified by the statute. The jury convicted Goldstein on multiple charges and acquitted on several others. MA113. The counts of conviction included Count 15, on which, as noted, the government's theory was that Goldstein was guilty under Section 2.

3. Despite post-trial briefing identifying this due process error, the district court refused to order a new trial. The court did not dispute that, if the final instructions operated as the government had originally intended—to allow conviction under Section 2—then a due process violation had occurred. It nevertheless denied the motion based on the government's novel theory that the

instructions do not permit a conviction under Section 2 *at all*. According to the district court, the deletion of the Accessory Elements instruction rendered all seven provisions instructing the jury that it could convict under Section 2 inoperative. *See* MA127-29. The court did not dispute that its deletion of the Accessory Elements instruction had violated Rule 30(b), which requires the court to finalize the jury instructions before closing arguments. Instead, it insisted that the amendment "did not prejudice Mr. Goldstein." *See* MA129-30.

### B. The District Court's Instructional Errors Raise Substantial Issues for Appeal

By omitting Section 2's elements from the jury instructions in violation of due process and making that change after closing argument in violation of Rule 30, the district court committed two instructional errors that each raise substantial questions on appeal.

#### 1. Omitting the elements of Section 2 from the jury instructions violated due process.

Courts must instruct the jury "as to the elements of [each] offense charged." *United States v. Polowichak*, 783 F.2d 410, 415 (4th Cir. 1986) (citation omitted). Simply "reading . . . the statute to the jury" does not suffice; "an exposition of the constituents of the offense is mandatory and indispensable." *United States v. Harris*, 346 F.2d 182, 184 (4th Cir. 1965). And this Court has applied that rule to Section 2 instructions specifically: In *Odum*, the Court held that the district court plainly erred

by "'read[ing] directly from' 18 U.S.C. § 2" without setting forth its elements. 65 F.4th at 720. That is precisely the error that occurred here: The district court stripped the instructions of the elements of Section 2 liability on the theory that reading the statute was sufficient—as the government insisted. *See* MA10; MA22-26.

When Goldstein's new-trial motion identified this legal error, the government reversed course. Rather than defend its prior theory that reading the statute was "sufficiently clear," MA10, the government claimed the instructions "*did not* permit the jury to convict under *any* § 2 theory," MA1304. The government even went so far as to claim that it "did not seek to convict Goldstein under [a § 2(a)] theory" in the first place. MA1304. Despite recognizing that the government's position on accessory liability had "shifted," the district court denied relief. *See* MA1388-89. Importantly, the court did not dispute that, if the instructions permitted a conviction under Section 2, then the instructions were inadequate and prejudicial—requiring a new trial as to every count. But the court concluded that the instructions did not allow the jury to convict under Section 2 in the first place.

That conclusion cannot be squared with the instructions. To determine if the instructions permitted conviction under Section 2, the Court must ask whether there is a "reasonable likelihood" that a "reasonable juror" would have understood the instructions in that manner. *Boyde v. California*, 494 U.S. 370, 380, 386 (1990). In

so doing, the Court must read the instructions "as a whole and in the context of the entire charge." *United States v. Lighty*, 616 F.3d 321, 366 (4th Cir. 2010) (citation omitted).

Here, there is at least a "reasonable likelihood" that the jury would have understood the instructions to allow for conviction under Section 2. *Boyde*, 494 U.S. at 380. Indeed, there can be no serious dispute that that is a reasonable reading of the instructions because the government itself consistently read the instructions that way—until the defense pointed out the error in post-trial motions. *Compare* MA10, *with* MA1304. It is implausible for the government—or the district court—to assert that it is not reasonably likely that the jury could have read the instructions in the very way that the government itself insisted that the jury *would* read the instructions. And it is even less plausible to suggest that there is not even a close question.

The government's initial position was correct. The district court instructed the jury that its role was to "find Mr. Goldstein guilty or not guilty" as to the "*offenses charged*." MA42 (emphasis added). The Charging Instructions for all four categories of charges, in turn, provided that Goldstein was "charged" with the substantive offense "and aiding and abetting, counseling, commanding, inducing or procuring such an offense." *See* MA55; MA60-61; MA71; MA75-76. And the instructions regarding tax evasion, false returns, and mortgage fraud each described Section 2 as "pertinent" and quoted the statutory text in full. *See* MA56; MA64-65;

MA78-79. That language provides ample reason for jurors to believe that their role was to determine guilt or innocence on Section 2 liability.

What is more, Section 2 featured prominently in the instructions: There were seven detailed references in total to Section 2 liability throughout the instructions, including three quotations of Section 2 in full. MA55; MA56; MA61; MA64-65; MA71; MA75-76; MA78-79. And the statutory language of Section 2(a) reads exactly like the language of elements, especially to lay jurors. It provides: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a). It would have been irrational for the jury to ignore those repeated and extensive instructions on Section 2. And the government has not cited any precedent suggesting that a point in jury instructions that appears seven times should be deemed irrelevant and inoperative.

Additional "context [from] the proceedings" lends further support to reading the instructions to permit conviction under Section 2. *Boyde*, 494 U.S. at 383. The jury received the final instructions against the backdrop of the preliminary instructions, which repeatedly invoked Section 2, *see supra* at 4; MA608-09; MA613; MA615-16; MA619, and only after it heard the government's lengthy case—which included a rebuttal case directed at Section 2—and closing arguments, which stressed the involvement of Goldstein's accountants, office assistants, and

wife, *see* MA1064-68; MA1070-71; MA1073-74; MA1088-89; MA1097-99; MA1214-15. That evidence would have provided fertile ground for a jury to wrongfully convict based on an erroneous understanding of the elements of accessory liability.

The jury's verdict on Count 15, moreover, confirms that the jury understood the instructions to permit a conviction based on Section 2. The government affirmatively acknowledged in closing that Mr. Goldstein "was in the Virgin Islands," not Maryland, when the mortgage application relevant for Count 15 was submitted. MA1097. That concession was necessary given the flight records admitted into evidence showing that Goldstein was in the Virgin Islands at the relevant time—records that the jury requested to review during deliberations. *See* MA97. So the only way for the jury to find venue for Count 15 was based on a theory of Section 2 cause liability—that Goldstein had caused his wife to submit the mortgage application in Maryland. And, critically, the instructional language on Section 2 was the same for Count 15 as it was for the tax evasion, false returns, and remaining mortgage fraud counts. *See* MA55; MA56; MA61; MA64-65; MA75-76; MA78-79. If the jury understood it could convict under a Section 2 theory of liability for Count 15, as it must have given the verdict, then it is at least "reasonabl[y] like[ly]" the jury understood it could do so as to those other counts too. *Boyde*, 494 U.S. at 380.

The district court's contrary reasoning lacks merit. To begin, the court failed to apply *Boyde*'s "reasonable likelihood" standard in analyzing the instructions. *See* MA127-29. Instead, the court offered its own interpretation of the charge, MA127-29, without ever asking—as *Boyde* requires—whether there is a "reasonable likelihood" a "reasonable juror" would have read the instructions to permit conviction under Section 2. *Boyde*, 494 U.S. at 380, 386. The court then compounded that error by suggesting that a retrial is warranted under Rule 33 only in the rare instance in which the court is convinced that the jury has convicted someone who is "innocent." MA125. But when the court commits an instructional error, and an objection to that error is preserved, a retrial is required unless the prosecution proves beyond a reasonable doubt that the jury convicted on a valid basis. *See United States v. Hastings*, 134 F.3d 235, 241 (4th Cir. 1998). Those legal errors alone justify reversal.

In any event, the district court's reading of the instructions is wrong on its own terms. The court's three central points only reinforce the due process error here. First, the court concluded that the instructions' repeated "references to Section 2" are best read as "simply summariz[ing] the charges alleged," not as "evidence for the Jury to consider." MA129. And the court noted that it had instructed jurors that "an indictment is merely a statement of charges and not itself evidence." MA128-29. But telling the jury that the indictment is not "evidence" says nothing about the

legal theories available for conviction, which the jury would have reasonably understood to include Section 2 liability, *supra* at 10-13. And instructing the jury that the indictment set forth the relevant "charges" only reinforces the problem: The Court had instructed the jury to "find Mr. Goldstein guilty or not guilty" as to the "offenses charged." MA42. So if those "charges" included Section 2 liability—as the Court told the jurors—then the jury would have reasonably understood its role as determining guilt or innocence on Section 2 liability.

The court's reading of the Section 2 language in the Charging Instructions as inoperative also makes no sense because it offers no explanation as to why the government would have abandoned its Section 2 theory. Recall that the government requested that the court include Section 2 in the preliminary instructions, MA578-80; fought to include instructions on Section 2 liability during the charge conference, MA961-62; and then insisted after closing argument that the Charging Instructions on Section 2 should "stay in," while only the Accessory Elements instruction should come out, MA8. Reading the Charging Instructions on Section 2 as inoperative renders the government's behavior nonsensical.

Second, the district court noted that "the Jury was properly instructed on what the essential elements are for each of the tax and mortgage fraud offenses." MA129. But proper instructions on the substantive-offense elements cannot cure the lack of adequate instructions on Section 2. To the contrary, the fact that the jury was

properly instructed on the elements of the substantive offenses only underscores the court's error. Just as it did for the substantive offenses, the district court was required to instruct on the elements for Section 2 liability too. *See Harris*, 346 F.2d at 184.

Third, the court's suggestion that the "evidence presented at trial was not sufficient to sustain a conviction under Section 2(a)" based on that provision's elements once again only points up its own error. MA127. Only a properly instructed jury would have known that the evidence presented at trial was not sufficient to sustain a conviction under Section 2(a). That is the constitutional problem—not the solution. Because the jury was never instructed on Section 2(a)'s elements, it did not know that the evidence presented was insufficient to sustain a conviction under Section 2(a)—in turn, creating the opportunity for the jury to wrongfully convict.

#### 2. The district court violated Rule 30(b) by amending the jury instructions after closing arguments.

The last-minute nature of the district court's decision to amend the instructions violated Rule 30(b). It is black-letter law that a court may not substantively amend the jury instructions following closing argument. *See* Fed. R. Crim. P. 30(b); *Horton*, 921 F.2d at 547. And the district court conceded that it had violated Rule 30(b) by eliminating the instructions on Section 2(a)'s elements after closing. *See* MA1390. The court nonetheless concluded its last-minute change to the jury

instructions "did not prejudice Mr. Goldstein," thereby obviating the need for a new trial. MA129. That is incorrect.

To establish prejudice for purposes of Rule 30(b), the defendant must simply show that the violation affected the defense's closing—for instance, by impacting counsel's ability to address a "new line of argument." *Horton*, 921 F.2d at 547-48. Prejudice is not measured by the effect on the outcome of the case. *Id.* That is because Rule 30(b) is designed to ensure the defendant has "an adequate opportunity to argue his innocence under the district court's instructions in order to be assured a fair trial." *Id*. at 546-47.

Here, if defense counsel had known that the jury would not be instructed on the elements of Section 2 liability, he would have approached closing argument differently. *Contra* MA130. Among other things, he would have argued that to convict under aiding-and-abetting liability the jury must find a guilty principal; that the defendant had willful intent to commit the tax offenses; and that the defendant took an affirmative act in furtherance of the underlying offense. *See Horton*, 921 F.2d at 543-44; *Winstead*, 708 F.2d at 927; *Odum*, 65 F.4th at 721-22. To avert an erroneous accessory liability conviction, it was "essential" to Goldstein's defense that the jury know those limits on Section 2 liability. *Horton*, 921 F.2d at 547. And had defense counsel known that the instructions would not explain those limits, he would have altered his closing to address that "new line of argument"—

demonstrating actual prejudice. *Id*. The Rule 30(b) violation here thus raises an independent substantial question for appeal.

## II. GOLDSTEIN DOES NOT POSE A FLIGHT RISK OR DANGER TO THE COMMUNITY

### A. Goldstein Lacks the Incentive or Ability to Flee

Throughout the district court proceedings, Goldstein appeared for every court date, and it is undisputed that he fully complied with all the post-conviction conditions of release that mitigated any flight risk. Those conditions include: (1) home confinement with a "24-hour-a-day lock down" except for "medical necessities, attorney visits, court appearances, or other [approved] activities"; (2) electronic location monitoring; (3) passport surrender; (4) monitoring of all communications; (5) prohibition on the use of any unapproved electronic devices; and (6) submission of monthly bank statements and prior approval for transfers. MA1407-09.

Under those rigid conditions, Goldstein lacks any ability to flee even if he had the incentive (he does not). Indeed, the district court itself recognized that those conditions adequately "mitigate[d]" any risk of flight post-conviction, MA1289, and reaffirmed that conclusion after denying Goldstein's new-trial motion, MA1395. Those conclusions accord with rulings from various other courts finding that similar conditions of release mitigate any flight risk even for those with extensive ties abroad and far greater sentencing exposure. *See, e.g.*, *United States v. Edelman*, No. 24-cr-

239, 2025 WL 1725957, at *3 (D.D.C. June 20, 2025) (defendant posed no flight risk subject to similar conditions, notwithstanding extensive ties to Russia and Kyrgyzstan), *see also United States v. Edelman*, No. 24-cr-239, 2024 WL 5093496 (D.D.C. Dec. 12, 2024); Sentencing Tr. at 75-81, *United States v. Javice*, No. 23-cr-251 (S.D.N.Y. Oct. 30, 2025), Dkt. 450 (defendant posed no flight risk subject to movement-restricting conditions, notwithstanding her dual French citizenship and connections abroad); *United States v. McComber*, No. 21-cr-036, 2024 WL 4664630, at *4-5 (D. Md. Nov. 4, 2024) (defendant posed no flight risk based on her consistent court appearances, notwithstanding her conviction for multiple fraud offenses).

Goldstein also has every incentive to remain in the United States to litigate his appeal. Goldstein has strong ties to the United States, including his parents, grandmother, and other family relations. He would forfeit those relationships and his ability to pursue his claims on appeal if he attempted to flee. There is no rational reason for him to do so, particularly in light of the 72-month sentence imposed. This is not a case where the defendant is subject to a "life sentence" or decades-long incarceration—creating "strong incentives" to flee notwithstanding the downsides. *United States v. Ali*, 793 F. Supp. 2d 386, 390-92 (D.D.C. 2011); *see United States v. Sanchez*, 995 F.2d 468, 469-70 (3d Cir. 1993). While the 72-month sentence imposed is substantial—and unwarranted—it is implausible that Goldstein would

become an international fugitive, expose himself to additional criminal liability, and forgo his right to an appeal to avoid that time in custody. That is especially true given the district court's acknowledgement that a new trial would be required if the jury instructions permitted conviction under Section 2.

Despite having permitted Goldstein to remain released post-conviction because Goldstein's conditions of release adequately mitigated any flight risk, the district court reversed course at the sentencing hearing. It announced that the "calcul[]us" was different post-sentencing. MA376. That determination was based on the court's mistaken view that the case is effectively over. As the district court saw it, Goldstein has a greater incentive to flee because he knows his sentence and has no substantial issues for appeal. MA376-79. But Goldstein knew for months that the government was seeking a significant custodial sentence, and that the court was unlikely to find that it had committed mistakes worthy of a new trial—nevertheless, he continued to appear for all court proceedings. Goldstein has deep respect for courts and their processes—as reflected by his decades-long career in the law—and the idea that he would resort to extrajudicial means to escape justice is farfetched.

In other words, Goldstein has long been aware that his best chance of vindicating his rights is through an appeal. If anything has changed, it is that the district court's flawed opinion denying Goldstein's new-trial motion only bolsters

his chances of success on appeal. *Supra* at 14-17. It would be irrational for Goldstein to attempt to flee and forfeit his appeal, while consigning himself to permanent exile. Moreover, nothing has changed Goldstein's "*ability* to flee"—his prior conditions of release foreclose any possibility of flight. *Edelman*, 2025 WL 1725957, at *3.

### B. Goldstein Is Not a Danger to the Community

Goldstein likewise poses no danger to the community. The district court necessarily held as much by permitting release post-conviction and again at the new-trial hearing. *See* MA1289; MA1395; 18 U.S.C. § 3143(a)(1). And the government itself never suggested that he could endanger anyone post-conviction. *See* MA1287 (government "recommend[ing] home confinement"). With good reason: Goldstein has no criminal history and has never been charged with a violent crime. It is also undisputed that no private victim suffered any harm from his alleged crimes.

Indeed, this Court and others typically find no danger for purposes of Section 3143 where a defendant is convicted of fraud- or tax-related crimes—even where those crimes are far more serious than those here. *See, e.g.*, Order, *United States v. McDonnell*, No. 15-4019 (4th Cir. Jan. 26, 2015), Dkt. 39 (conviction for honest-services wire fraud by public official); *Edelman*, 2025 WL 1725957, at *1 (conviction for evading taxes on $350 million in income), *see also Edelman*, 2024 WL 5093496; Sentencing Tr. at 10-12, *Javice*, No. 23-cr-251-AKH (S.D.N.Y. Oct.

30, 2025), Dkt. 450 (conviction for fraud that caused $174 million in loss), *see also* Judgment at 1 (Oct. 30, 2025), Dkt. No. 449; *McComber*, 2024 WL 4664630, at *1 (conviction for fraud). And although some courts have concluded that "economic danger" can inform the Section 3143 inquiry where there is a risk of pecuniary harm to private individuals, *United States v. Jinwright*, No. 09-cr-067, 2010 WL 2926084, at *2 (W.D.N.C. July 23, 2010), the government and district court have identified no case in which a court has held that an alleged risk of repeated *tax violations* could qualify. Such a holding would be nonsensical: The only direct victim of a tax crime is the federal fisc, and it is implausible that detaining an individual would reduce any threat to the fisc.

The district court thus rightly never expressly found that Goldstein was a danger to the community. *See* MA376-77. Instead, after recounting the issues raised by the government, the court explained that it "need[ed] to look at the last issue"—whether there was a substantial question for appeal. MA377.

## CONCLUSION

For the foregoing reasons, the Court should grant release pending appeal.

Dated: August 18, 2026

Respectfully submitted,


<u>*/s/ Elizabeth B. Prelogar*</u>
Elizabeth B. Prelogar
Andrew D. Goldstein
Ephraim A. McDowell
Elias S. Kim
Jade Ford
COOLEY LLP
1299 Pennsylvania Ave., NW, Suite 700
Washington, DC 20004
(202) 842-7800
eprelogar@cooley.com

*Counsel for Defendant-Appellant Thomas C. Goldstein*

Jonathan Kravis
LIU SHUR KRAVIS LLP
607 Fourteenth Street, NW
Suite 625
Washington, DC 20005
(202) 240-7100
jonathan.kravis@lskllp.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Elizabeth B. Prelogar*
Elizabeth B. Prelogar

## CERTIFICATE OF COMPLIANCE

I certify that:

1. This motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it consists of 5,173 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f).

2. This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced, serif typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Elizabeth B. Prelogar*
Elizabeth B. Prelogar