**No. 26-4392**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
*Appellee*,

*v.*

THOMAS C. GOLDSTEIN,
*Appellant*.

On Appeal from the United States District Court
for the District of Maryland (No. 1:25-cr-00006-LKG)
The Honorable Lydia K. Griggsby

# REPLY IN SUPPORT OF APPELLANT'S MOTION FOR RELEASE PENDING APPEAL

Jonathan Kravis
LIU SHUR KRAVIS LLP
607 Fourteenth Street NW
Suite 625
Washington, DC 20005
(202) 240-7100
jonathan.kravis@lskllp.com

Elizabeth B. Prelogar
*Counsel of Record*
Andrew D. Goldstein
Ephraim A. McDowell
Elias S. Kim
Jade Ford
COOLEY LLP
1299 Pennsylvania Ave., NW, Suite 700
Washington, DC 20004
(202) 842-7800
eprelogar@cooley.com

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................. 2

I. The District Court's Instructional Errors Raise Substantial Questions For Appeal ........................................................ 2

II. Goldstein Is Not A Danger To The Community ................................ 8

III. Goldstein Does Not Pose A Flight Risk ........................................... 11

CONCLUSION ......................................................................................... 12

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Boyde v. California*,
494 U.S. 370 (1990)....................2

*Samia v. United States*,
599 U.S. 635 (2023)....................4

*United States v. Affleck*,
765 F.2d 944 (10th Cir. 1985)....................10

*United States v. Didonna*,
866 F.3d 40 (1st Cir. 2017)....................3

*United States v. Harris*,
942 F.2d 1125 (7th Cir. 1991)....................8

*United States v. Hastings*,
134 F.3d 235 (4th Cir. 1998)....................2, 6, 7

*United States v. Jinwright*,
2010 WL 2926084 (W.D.N.C. July 23, 2010)....................9

**Statutes**

18 U.S.C. § 2....................1

26 U.S.C. § 7201....................4

## INTRODUCTION

The government's opposition confirms this appeal presents a substantial question—and worse, that the government is willing to mischaracterize the record to avoid saying so. The government concedes its complete reversal on the critical instructional issue: It previously argued that reading the text of 18 U.S.C. § 2, without instructing on its elements, sufficed to instruct the jury on accessory liability for every count. Unable to defend that error, it now claims there is not even a "reasonable likelihood" the jury could have read the instructions that way. The government's about-face demonstrates this question is substantial; indeed, it would be absurd to say no reasonable jury could read the instructions the same way the government previously did.

The government's arguments on flight risk and dangerousness fare no better. No court has ever found a defendant dangerous based on tax offenses. Nor is Goldstein a flight risk: The district court twice found that stringent release conditions—including location monitoring, electronic device monitoring, 24-hour home confinement, and passport surrender—sufficiently mitigate any risk. The government never explains how Goldstein could flee under those conditions or why he would try given his paramount interest in pursuing this appeal.

Release pending appeal is thus warranted—and necessary to avert a grave injustice. Without this Court's intervention Goldstein will serve months, if not years, in custody for a sentence that will no longer stand after his appeal.

## ARGUMENT

### I. THE DISTRICT COURT'S INSTRUCTIONAL ERRORS RAISE SUBSTANTIAL QUESTIONS FOR APPEAL

The government's opposition only underscores the district court's due process and Rule 30(b) violations. The government does not dispute that it misstated the law to the district court: Reading the statutory language is insufficient to instruct on Section 2 liability in accordance with due process. Nor does the government attempt to satisfy the harmless-error standard, which requires showing "beyond a reasonable doubt" that the jury "must have" found Goldstein guilty of the substantive offenses instead of accessory liability. *United States v. Hastings*, 134 F.3d 235, 241-42 (4th Cir. 1998). That means the dispositive question is whether there is a "reasonable likelihood" the jury understood the instructions to permit conviction under Section 2. *Boyde v. California*, 494 U.S. 370, 380 (1990).

The answer is yes. The government's own concessions and conduct confirm the point. The government admits it reversed its position on Section 2 liability. *See* Opp. 20-21. But the government misrepresents what really happened. It claims it "mistakenly" "propos[ed] a § 2(a) instruction despite never presenting a § 2(a) case" and so sought a last-minute change to remove Section 2 from the case entirely. Opp.

21. That claim flatly contradicts the record. In its proposed instructions and at the charge conference, the government repeatedly asserted it had introduced sufficient evidence to pursue conviction under Section 2(a). MA684; MA711; MA744; MA961-62. Following closing arguments, the government stated "this is a § 2(b) case (*in addition to (a)*)," MA1226 (emphasis added), and insisted that Section 2's statutory text was "sufficiently clear" to instruct the jury on both Section 2 theories, MA10. Critically, the government fought to keep the Section 2(a) and 2(b) language in the instructions while removing *only* the instruction containing Section 2(a)'s elements, stating the elements language "should come out, and the other aiding and abetting language should stay in." MA8. Why would the government have opposed removing all Section 2 language if it was not seeking a conviction under Section 2 and not asking to submit that theory to the jury? The government's revisionist history ignores that "[i]n dealing with criminal defendants"—and in making representations to this Court—"the government must turn square corners." *United States v. Didonna*, 866 F.3d 40, 50 (1st Cir. 2017).

The government tries to wave away this record by asserting that "what matters are the instructions the jury received, not the government's thoughts on them." Opp. 20. But the fact that government lawyers *themselves* read the instructions to permit conviction under Section 2 proves a reasonable likelihood lay jurors would have understood them the same way. And the district court, too, previously read the

instructions this way: In deleting the accessory elements language, it observed that "[t]he other language [on aiding and abetting liability] is in there," MA26—echoing the government's view that the language needed to convict under Section 2 was "already in the instructions," MA21. That alone creates a substantial question.

In any event, the government's new reading of the instructions fails. First, it assumes the jury would have *ignored* whole portions of the charge. The court told jurors to find Goldstein "guilty or not guilty" of the "offenses charged"; identified Section 2 liability as one such "charge[]" for every category of offense; and repeatedly recited the full statutory text of Section 2(a) and (b), which it described as "pertinent." MA42; MA55-56; MA65; MA72; MA78. Any reasonable jury would have understood its task as deciding Section 2 liability for every count using the "pertinent" statutory text—especially since "our legal system presumes that jurors will attend closely" to instructions and "strive to . . . follow them." *Samia v. United States*, 599 U.S. 635, 646 (2023) (citation omitted).

Second, the government's reading rests on a false premise: that the instructions precluded conviction under Section 2 because the elements instructions told the jury what "'the government must'" prove to convict. Opp. 19 (quoting MA56). But those instructions set forth only the elements of the *substantive* offenses. *See* MA56-58; MA65-66; MA72-73; MA79-80. For instance, for tax evasion under 26 U.S.C. § 7201, the instructions explained the elements "for the

crime of *income tax evasion* to be proved." MA56 (emphasis added). As a result, Section 2 remained an alternative pathway for the jury to wrongfully convict *without* finding each of those elements—and without finding the elements of Section 2 that do not appear in the statutory text.

The conviction on Count 15 proves the point. Section 2(b) liability provided the only basis for venue on that count because the government conceded in closing argument that Goldstein was not in Maryland when the mortgage application was submitted. And the government's invocation (Opp. 22-23) of IP data—which shows only that the application was submitted from Goldstein's home—underscores the jury must have credited the government's rebuttal case that Goldstein caused his wife to submit the application.

Lacking a coherent reading of the instructions, the government claims for the first time that, "at most[,] these issues affected [Goldstein's] mortgage-fraud convictions." Opp. 13. But the instructions specified Goldstein was charged with Section 2 liability *for every count*. And the government insisted at the charge conference that it had "introduced more than sufficient evidence to support an aiding and abetting instruction" for each count. MA684; MA711; MA744. So it was the government's own position that the jury could convict under an accessory-liability theory across the board. Moreover, the government bears the burden to prove "beyond a reasonable doubt" that the jury "must have" convicted Goldstein of the

substantive offenses, rather than accessory liability. *Hastings*, 134 F.3d at 241-42. Its conclusory assertions that the instructional error affected only the mortgage-fraud convictions come nowhere close to meeting that burden.

The government's remaining arguments are similarly flawed. The government contends that the "[t]he failure-to-pay counts do not mention § 2 and have nothing to do with § 2." Opp. 26. But those instructions used the same language effectively quoting Section 2 that appeared in the other counts, which the jury would have recognized. MA71 (stating Goldstein was "charge[d]" with the substantive offense "and aiding and abetting, counseling, commanding, inducing or procuring such an offense"). And the jury had seen evidence that Goldstein's tax preparer, Walter Deyhle, advised him that he could pay his taxes later and simply pay penalties. *See* Attach. A, at 14-16; Attach. B, at 8. Without instructions on Section 2's elements, the jury would not have known it needed to find a guilty principal or that Goldstein acted willfully in relying on that advice and choosing to pay late—creating the opportunity for wrongful conviction. Moreover, the failure-to-pay counts are misdemeanors, and Goldstein has fully repaid the amounts owed for those years. If those are the only surviving counts, the guidelines range would be dramatically different—and Goldstein would likely no longer face a custodial sentence. Release pending appeal would thus still be warranted.

The government next contends that, because "the elements instructions on tax evasion and § 7206(2) discussed the involvement of third parties," any juror who deemed Section 2 relevant "would understand the elements instructions to already provide the necessary guidance." Opp. 26. That ignores the central problem: The court provided an *alternative* pathway to conviction for each count under Section 2, without instructing on its elements. The fact that the jury could have also considered third-party involvement in assessing primary liability does not prove "beyond a reasonable doubt" that the jury "must have" convicted Goldstein on that theory. *Hastings*, 134 F.3d at 241-42.

The government similarly offers no cogent response on the prejudice inquiry for the conceded Rule 30(b) violation. *See* Opp. 25. It ignores that the violation deprived Goldstein of the right to argue his innocence to the jury based on the actual instructions. *See* Mot. 17-18.

Finally, the government misleadingly invokes the district court's statement that the case was not "close," Opp. 2, which it plucks from a discussion of another issue. The court never concluded that the Section 2 question was "not close"—nor could it have, given the government's reversal on that very issue. Moreover, the government ignores the district court's error in suggesting retrial is warranted only if the court believes a defendant is actually innocent, MA125, which is not the Rule

33 standard. At any rate, this Court reviews the substantial-question inquiry *de novo*—and Goldstein satisfies that factor here.

* * *

If the Court is not yet fully persuaded that Goldstein's appeal presents a substantial question, the appropriate course is to briefly defer ruling on this Motion. The defense will file its opening brief on the merits substantially before the September 29, 2026 deadline. In addition to the Section 2 argument, which is the focus of this Motion only because it most obviously addresses all of the counts, that brief will raise two additional arguments that require reversal of the tax counts: (1) the district court erroneously excluded the defense's most critical evidence on the central tax charge as hearsay; and (2) the prosecution violated *Brady* by failing to timely disclose a mid-trial meeting with Deyhle, the government's key witness. Accordingly, if the Court has any doubts on the substantial-question inquiry, it should defer ruling on this Motion until it has reviewed the opening brief. *Cf. United States v. Harris*, 942 F.2d 1125, 1135 n.7 (7th Cir. 1991).

## II. GOLDSTEIN IS NOT A DANGER TO THE COMMUNITY

The government incorrectly asserts (at 13) that the district court deemed Goldstein "a 'danger to the community.'" That language appears in the court's recitation of the release standard, when it explained that it had "assess[ed]" all relevant factors; it was not a finding of dangerousness. MA379. In fact, when the

government urged the court to find Goldstein dangerous, the court stated it was "not able to sort through all of that" and therefore "need[ed] to look at the last" factor—the substantial-question inquiry—to resolve the motion. MA377. Because the court never found Goldstein dangerous, there is no finding to which this Court could "defer[]." *Contra* Opp. 6.

The government argues (at 11-13) that Goldstein is dangerous based on his supposed propensity to commit further tax offenses.[1] But no court has ever found danger to the community based on tax offenses. The government does not dispute that fact, instead resorting to generalities that "*any* felony" equates with dangerousness and "taxes are 'what we pay for civilized society.'" Opp. 12 (citation omitted).

That reasoning lacks merit. Section 3143's "dangerousness" factor focuses on defendants who may cause immediate harm while appeal is pending. Although some courts have denied release to prevent acute economic harm to community members, *United States v. Jinwright*, 2010 WL 2926084, at *2 (W.D.N.C. July 23, 2010), that logic does not apply to tax offenses, which require longer-term accumulation of income and failure to pay. Thus, courts have routinely concluded that defendants convicted of "willfully failing to file federal income tax returns" do

[1] The government therefore concedes the mortgage-fraud offenses are not a basis for finding dangerousness.

"not pose a danger to the community." *E.g.*, *United States v. Affleck*, 765 F.2d 944, 946-47 (10th Cir. 1985) (en banc).

Goldstein has carried his burden to show lack of dangerousness at every stage of the case. Mot. 21. That is why the district court ordered him released until sentencing, notwithstanding the alleged misconduct the government invokes. And even after sentencing, the court recommended that the Bureau of Prisons place Goldstein at a minimum-security camp. D. Ct. Dkt. 576.

Since the court ordered Goldstein to remain released in June, only one relevant development has occurred: The government accused Goldstein of misconduct concerning his 2025 taxes. But that issue was hotly disputed and, as the government concedes (at 13), the court did not find that conduct criminal—nor did it even resolve the parties' dispute.[2] Moreover, the accusations are baseless. Goldstein prepaid his 2022 taxes and received a credit, which he attempted to use for his 2025 taxes. MA282. After the IRS told him this was not allowed, he applied the credit to his and his wife's 2022 returns. MA282; MA372. Nothing about that conduct suggests that Goldstein is dangerous.

[2] The government repeatedly cites its own allegations on points the district court did not accept. *E.g.*, Opp. 7 (accusing Goldstein of additional tax violations that the district court did not find). Remarkably, the government insinuates (at 7) that Goldstein did not file his 2022-2024 returns even though his counsel provided the government with the tracking number and name of the IRS official who signed for those returns before the government filed its opposition to this Motion.

## III. GOLDSTEIN DOES NOT POSE A FLIGHT RISK

Goldstein poses no flight risk. The government speculates that—notwithstanding location monitoring, electronic device monitoring, 24-hour home lock-down, and passport surrender—Goldstein could somehow flee because he previously engaged in cryptocurrency transactions and has "foreign ties." Opp. 10-11. That is fanciful. Goldstein had no access to cryptocurrency wallets while released, *see* MA1407-08, and the government never explains how Goldstein could conceivably flee under stringent release conditions.

Critically, the government pressed similar arguments post-conviction and after the court denied Goldstein's post-trial motions—both times insisting Goldstein would flee. MA1282-83; MA1392-95. The government was wrong. At both junctures, the court permitted Goldstein to remain released, finding his release conditions "mitigate[d]" any flight risk, MA1289; MA1395. That finding of clear and convincing evidence that Goldstein would not flee is the exact standard at issue now. And that finding remains true: Goldstein's *ability* to flee has not changed—a point the district court did not dispute.

The government also ignores Goldstein's strong incentives to stay. It would be irrational for Goldstein to attempt to flee: Doing so would forfeit his opportunity to appeal, expose him to additional criminal liability, and consign him to a life in exile as an international fugitive. That decision makes no sense for a defendant

facing a six-year sentence, which will likely be years shorter taking into account First Step Act credits and good conduct. The district court's flawed resolution of the post-trial motions only crystallized Goldstein's likelihood of success on appeal and reinforced his already strong incentives to pursue vindication through the legal process.

## CONCLUSION

The Court should grant release pending appeal.

Dated: September 4, 2026

Respectfully submitted,

*/s/ Elizabeth B. Prelogar*

Elizabeth B. Prelogar
Andrew D. Goldstein
Ephraim A. McDowell
Elias S. Kim
Jade Ford
COOLEY LLP
1299 Pennsylvania Ave., NW, Suite 700
Washington, DC 20004
(202) 842-7800
eprelogar@cooley.com

*Counsel for Defendant-Appellant Thomas C. Goldstein*

Jonathan Kravis
LIU SHUR KRAVIS LLP
607 Fourteenth Street, NW
Suite 625
Washington, DC 20005
(202) 240-7100
jonathan.kravis@lskllp.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Elizabeth B. Prelogar*
Elizabeth B. Prelogar

## CERTIFICATE OF COMPLIANCE

I certify that:

1. This motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(C) because it consists of 2,600 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f).

2. This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced, serif typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Elizabeth B. Prelogar*
Elizabeth B. Prelogar