**No. 26-4392**

# In the United States Court of Appeals for the Fourth Circuit

**UNITED STATES OF AMERICA,**
*Plaintiff-Appellee,*

**v.**

**THOMAS C. GOLDSTEIN,**
*Defendant-Appellant.*

On Appeal from the United States District Court for the District of Maryland at Greenbelt, No. 8:25-cr-00006-LKG-1
Hon. Lydia Kay Griggsby, U.S. District Judge

**BRIEF OF PROFESSORS ANDREW MANUEL CRESPO, JOSHUA DRESSLER & CAROL STEIKER AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT-APPELLANT AND REVERSAL**

Hilary Ledwell
Gavan W. Duffy Gideon
JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001
(202) 639-6000
hledwell@jenner.com

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

IDENTITY AND INTEREST OF *AMICI CURIAE* ..... 1

SUMMARY OF ARGUMENT ..... 2

ARGUMENT ..... 3

I. Jury Instructions Play a Crucial Role in Substantive Criminal Law. ..... 3

II. The District Court Improperly Instructed the Jury on Aiding and Abetting Under 18 U.S.C. § 2(a) by Failing to Enumerate the Elements of Accessory Liability ..... 7

A. The District Court's Instructions Invited the Jury to Consider the Defendant's Guilt Under an Aiding-and-Abetting Theory of Liability. ..... 7

B. The District Court's Aiding-and-Abetting Instructions Were Deficient. ..... 12

III. The Multi-Actor Fact Pattern Invited an Aiding-and-Abetting Verdict. ..... 18

CONCLUSION ..... 21

## TABLE OF AUTHORITIES

### Cases


*Carter v. Kentucky*, 450 U.S. 288 (1981) ....................4

*Francis v. Franklin*, 471 U.S. 307 (1985) ....................8

*Hicks v. United States*, 150 U.S. 442 (1893) ....................15

*Krulewitch v. United States*, 336 U.S. 440 (1949)....................18

*McDougall v. Dixon*, 921 F.2d 518 (4th Cir. 1990) ....................9

*Rosemond v. United States*, 572 U.S. 65 (2014)....................14, 15

*Scales v. United States*, 367 U.S. 203 (1961) ....................18, 20

*Sparf v. United States*, 156 U.S. 51 (1895)....................5

*United Brotherhood of Carpenters & Joiners of America v. United States*, 330 U.S. 395 (1947) ....................19

*United States v. Battiste*, 24 F. Cas. 1042 (C.C.D. Mass. 1835) ....................5

*United States v. Burgos*, 94 F.3d 849 (4th Cir. 1996) (en banc) ....................13

*United States v. Coward*, 669 F.2d 180 (4th Cir. 1982) ....................11

*United States v. England*, 966 F.2d 403 (8th Cir. 1992) ....................11

*United States v. Garcia*, 562 F.2d 411 (7th Cir. 1977)....................11

*United States v. Gaudin*, 515 U.S. 506 (1995) ....................6

*United States v. Head*, 641 F.2d 174 (4th Cir. 1981) ....................6, 16

*United States v. Horton*, 921 F.2d 540 (4th Cir. 1990) ....................12, 13

*United States v. Hutchison*, 338 F.2d 991 (4th Cir. 1964) (per curiam)....................6, 7

*United States v. Lamborn*, 159 F.4th 230 (4th Cir. 2025) ....................13

*United States v. Lewis*, 53 F.3d 29 (4th Cir. 1995)........................................4, 20

*United States v. Moylan*, 417 F.2d 1002 (4th Cir. 1969)....................................4, 5

*United States v. Odum*, 65 F.4th 714 (4th Cir. 2023) ..........................13, 14, 16, 17

*United States v. Peoni*, 100 F.2d 401 (2d Cir. 1938)..........................................19

*United States v. Polowichak*, 783 F.2d 410 (4th Cir. 1986) ..................................7

*United States v. Press*, 336 F.2d 1003 (2d Cir. 1964) ........................................10

*United States v. Ribaste*, 905 F.2d 1140 (8th Cir. 1990), *abrogation recognized by United States v. Wells*, 519 U.S. 482 (1997)................................8

*United States v. Singh*, 532 F.3d 1053 (9th Cir. 2008)........................................12

*United States v. Walden*, 464 F.2d 1015 (4th Cir. 1972)......................................17

*United States v. Winstead*, 708 F.2d 925 (4th Cir. 1983) .....................................14

**STATUTES**

18 U.S.C. § 2(a) .............................................................................2, 7, 8, 9, 16, 17

**OTHER AUTHORITIES**

Albert W. Alschuler & Andrew G. Deiss, *A Brief History of the Criminal Jury in the United States*, 61 U. Chi. L. Rev. 867 (1994).....................4

Andrew Manuel Crespo & John Rappaport, *Criminal Law & the American Penal System: Cases & Context* (2025) ....................13, 14, 15, 17, 19

R.J. Farley, *Instructions to Juries—Their Role in the Judicial Process*, 42 Yale L.J. 194 (1932) .........................................................................................5

1 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions*, Westlaw (6th ed., database updated Aug. 2026) ........................................... 3-4

Mark DeWolfe Howe, *Juries as Judges of Criminal Law*, 52 Harv. L. Rev. 582 (1939).........................................................................................4

6 Wayne R. LaFave et al., *Criminal Procedure*, Westlaw (5th ed., database updated Nov. 2025) ..........................................................6

2 Wayne R. LaFave, *Substantive Criminal Law* (3d ed. 2018) .........................12, 14

2A Peter J. Henning & Sarah N. Welling, *Federal Practice and Procedure* (4th ed. 2009) ..................................................................3, 16

## IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* are scholars of criminal law and procedure at U.S. law schools.

Andrew Manuel Crespo is the Morris Wasserstein Public Interest Professor of Law at Harvard University, where he teaches and writes about criminal law and procedure. He is the co-author of *Criminal Law and the American Penal System*, a textbook used by law professors across the country to teach the core principles of substantive criminal law and liability to law students.

Joshua Dressler is a Distinguished University Professor and Professor of Law emeritus at the Ohio State Michael E. Moritz College of Law. He is the author of casebooks in the fields of criminal law and criminal procedure widely used by professors across American law schools, as well as co-author of two treatises used by law students and the legal profession.

Carol Steiker is the Henry J. Friendly Professor of Law at Harvard Law School. Her scholarship covers the broad field of criminal justice, from substantive criminal law to criminal procedure to institutional design, with a special focus on capital punishment.

---

[1] All parties have consented to the filing of this brief. No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money to fund preparing or submitting this brief. No person other than *amici curiae* or their counsel contributed money to fund preparing or submitting this brief.

*Amici* have an interest in the sound development of federal criminal law regarding jury instructions and accessory liability—both areas of law that are implicated in this case.

## SUMMARY OF ARGUMENT

Jury instructions are essential to the proper administration of substantive criminal law. Ever since the authority over legal questions in criminal cases passed from jurors to courts in the nineteenth century, the jury charge has served to translate substantive criminal doctrine into case outcomes and verdicts. The most important part of a jury charge is its enumeration of the offenses alleged and the elements of each offense.

The jury charge in this case incorporated and repeatedly invited the jury to assess the defendant's guilt under an aiding-and-abetting theory of liability, as set forth in 18 U.S.C. § 2(a), the federal aiding-and-abetting statute. Invoking the indictment as a guide in outlining the charges that were on the table for the jury's consideration, the district court explained that Defendant-Appellant Thomas Goldstein was charged not only with four substantive offenses but also aiding and abetting each offense. And the court repeatedly recited the text of Section 2(a) in full. Those instructions opened the door for the jury to convict Goldstein on an aiding-and-abetting theory of liability. Yet the district court's instructions never identified the established and essential elements of aiding and abetting—including

the requirement that, before finding a defendant guilty as an accomplice, the jury must first find that a principal actor was guilty of the underlying offense. That failure rendered the instructions fatally deficient.

This is a prime example of a case where deficient aiding-and-abetting instructions could have affected the verdict. When jurors are presented with evidence of misconduct involving multiple parties, there is a danger that they paint with a broad brush—failing to assess a defendant's personal guilt, and instead assuming guilt by association. That risk was plainly present here given the multi-actor fact pattern and the extensive evidence presented at trial regarding Goldstein's interactions with third parties. Proper instructions on the elements of aiding and abetting would have focused the jury's mind on the carefully drawn limits of accomplice liability. But without any instruction on those elements, the facts of the case invited the jury to convict the defendant on an aiding-and-abetting theory of liability without ever having actually concluded that he broke the law.

## ARGUMENT

### I. Jury Instructions Play a Crucial Role in Substantive Criminal Law.

Jury instructions serve a vital function in criminal trials: "they provide the structure for the jury's application of the law to the facts." 2A Peter J. Henning & Sarah N. Welling, *Federal Practice and Procedure* § 481 (4th ed. 2009) [hereinafter Wright & Miller]; *see also, e.g.*, 1 Kevin F. O'Malley et al., *Federal Jury Practice*

*and Instructions* § 7:1, Westlaw (6th ed., database updated Aug. 2026) ("Jury instructions serve as the legal framework under which jurors weight the evidence presented."); *United States v. Lewis*, 53 F.3d 29, 34 (4th Cir. 1995) ("The purpose of jury instructions is to instruct the jury clearly regarding the law to be applied in the case."). Thus, for jurors "to function effectively, and justly, they must be accurately instructed in the law," *Carter v. Kentucky*, 450 U.S. 288, 302 (1981), including as to the elements of each offense with which a defendant is charged.

The importance of jury instructions to criminal law is a consequence of the division of labor between judge and jury. At the Founding, juries were often responsible for deciding questions of both fact and law. *See, e.g.*, Albert W. Alschuler & Andrew G. Deiss, *A Brief History of the Criminal Jury in the United States*, 61 U. Chi. L. Rev. 867, 903 (1994). And "[i]n criminal cases [they] remained the judges of both law and fact for approximately fifty years after the Revolution." *United States v. Moylan*, 417 F.2d 1002, 1006 (4th Cir. 1969). Because they resolved legal questions, jurors were not necessarily dependent on instructions from a judge identifying the law to be applied in any given case. *See, e.g.*, 61 U. Chi. L. Rev. at 904 ("There were no issues to be 'framed' for the jury because the entire dispute was within the province of the jury." (quoting Bruce H. Mann, *Neighbors and Strangers: Law & Community in Early Connecticut* 70 (1987))); Mark DeWolfe Howe, *Juries as Judges of Criminal Law*, 52 Harv. L. Rev. 582, 584 (1939) ("There

were … many years in our history when juries were specifically instructed that they could disregard the judge's opinion of the law and determine that matter for themselves.").

That dynamic began to change in the nineteenth century, as state and federal courts embraced the view that authority over legal questions belonged exclusively to the courts. *See, e.g.*, *United States v. Battiste*, 24 F. Cas. 1042, 1043 (C.C.D. Mass. 1835) (Story, J.) ("It is the duty of the court to instruct the jury as to the law[.]"). Judges "asserted themselves increasingly through their instructions on the law." *Moylan*, 417 F.2d at 1006. And in 1895, the Supreme Court determined conclusively that "it is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence." *Sparf v. United States*, 156 U.S. 51, 102 (1895).

With legal questions transferred to the wheelhouse of courts, a judge's instructions to the jury became the essential vehicle for translating criminal doctrine into cases and outcomes. *See, e.g.*, R.J. Farley, *Instructions to Juries—Their Role in the Judicial Process*, 42 Yale L.J. 194, 206 (1932) ("Their avowed function is to state the substantive law as a text-book for the jury against a back-ground of the individual case[.]"). In particular, the instructions delivered at the end of trial, also known as a jury charge, are what now equip the jury in a criminal case to reach a verdict. Those instructions identify the offenses with which a defendant is charged,

and set out the legal rules, guidelines, and definitions that a jury is required to apply to the evidence in determining whether a defendant is guilty. They are in this sense not just instructions, but an instruction manual: a description of the task the jury is charged with completing, and a set of directives about how that task is to be carried out, under the governing laws of the jurisdiction.

Within the jury charge, "[t]he most important and essential part of instruction as to the law which the jury is to apply in a case is the essential elements of the crime charged." *United States v. Hutchison*, 338 F.2d 991, 991 (4th Cir. 1964) (per curiam); *see also United States v. Head*, 641 F.2d 174, 180 (4th Cir. 1981) ("In every criminal prosecution … an exposition of the constituents of the offense is mandatory and indispensable." (quoting *United States v. Harris*, 346 F.2d 182, 184 (4th Cir. 1965))); 6 Wayne R. LaFave et al., *Criminal Procedure* § 24.8(c), Westlaw (5th ed., database updated Nov. 2025) ("As to [instructions on] the substantive criminal law, the starting point is the elements of the offense charged."). The Fifth and Sixth Amendments "require criminal convictions to rest upon a jury determination that the defendant is guilty of *every element* of the crime with which he is charged." *United States v. Gaudin*, 515 U.S. 506, 509-10 (1995) (emphasis added). A jury thus cannot find a defendant guilty without accurate instructions on all of the elements. And this Court has "repeatedly said that [it] 'cannot and will not affirm a conviction by a jury unless the District Court'" provides those essential instructions, "whether requested

or not." *United States v. Polowichak*, 783 F.2d 410, 415 (4th Cir. 1986) (quoting *Hutchison*, 338 F.2d at 991)).

## II. The District Court Improperly Instructed the Jury on Aiding and Abetting Under 18 U.S.C. § 2(a) by Failing to Enumerate the Elements of Accessory Liability.

In addition to charging violations of four statutes that set out substantive criminal offenses, the government in this case alleged that Goldstein violated 18 U.S.C. § 2(a)—the federal aiding-and-abetting statute. Consistent with the indictment, the district court's instructions invited the jury to convict Goldstein on an accessory theory of liability. But the jury charge on Section 2(a) was deficient, as it did not identify all of the elements of aiding-and-abetting liability, including the requirement that the jury find a guilty principal. That error requires reversal.

### A. The District Court's Instructions Invited the Jury to Consider the Defendant's Guilt Under an Aiding-and-Abetting Theory of Liability.

The district court's jury charge directly incorporated aiding-and-abetting liability under Section 2(a). In the opening instruction for each of the four substantive offenses, the district court told the jury that Goldstein had been charged with both the relevant offense "*and* aiding and abetting, counseling, commanding, inducing or procuring such an offense"—the language of Section 2(a) (emphasis added). JA584; JA600; *accord* JA589-90; JA604-05. And in three of those four instructions, after referencing the statute underlying the substantive offense that was

charged in the indictment, the court told the jury that "[t]he indictment *also* alleges that Mr. Goldstein violated Section 2 of Title 18 of the United States Code," the text of which the Court described as "pertinent" and then read in full. JA585; JA593-94; JA607-08 (emphasis added).

Those instructions invited the jury to convict Goldstein on an aiding-and-abetting theory of liability. "The purpose of instructing the jury is to focus its attention on the essential issues in the case and inform it of the permissible ways in which these issues may be resolved." *United States v. Ribaste*, 905 F.2d 1140, 1143 (8th Cir. 1990), *abrogation on other grounds recognized by United States v. Wells*, 519 U.S. 482 (1997); *see also supra* pp. 5-7. And because the instructions in this case described each substantive offense as encompassing "aiding" and "abetting" under Section 2(a), jurors would reasonably and naturally have assumed they could find Goldstein guilty of each offense *either* as a principal *or* as an accomplice—under the alternative aiding-and-abetting theory of liability that "[t]he indictment also alleges." *E.g.*, JA585. Indeed, the district court's repeated references to this alternative theory of liability could have served no purpose in the charge *other* than to instruct the jury that the theory was on the table for their consideration. *Cf. Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985) ("The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case[.]").

The district court concluded otherwise by reasoning that the references to Section 2(a) were not operative instructions, but instead merely "summarized the charges alleged" in the indictment. JA659. But the court did not merely summarize the indictment's charges: It *omitted* from its charge those counts in the indictment that had previously been stricken, *see* JA642 n.1; JA584-612—thus confirming that its "summary" of the indictment was in fact, as is typical, a roadmap of the charges that remained live for the jury's consideration. And, with respect to accessory liability specifically, the instructions went further than the indictment in identifying aiding and abetting as an available path to liability. The government never actually used the words aid or abet in the indictment counts; it instead simply listed "18 U.S.C. § 2" directly beneath the statute underlying the substantive offense as part of each count. JA787-801. By reciting the statute in full, and referring to accessory liability expressly, the district court's instructions accordingly invited an aiding-and-abetting conviction that a mere reading of the indictment would have left submerged.

The district court's minimization of its repeated descriptions of Section 2(a) liability in its charge as merely summarizing the government's allegations misses the important road-mapping function the jury instructions play for a jury. "The test of [a] charge is what a reasonable juror would have understood the entire charge to mean." *See McDougall v. Dixon*, 921 F.2d 518, 532-33 (4th Cir. 1990). And here, the charge as a whole relied on the indictment as a "guide in delineating the issues

the jury [was] called on to decide." *United States v. Press*, 336 F.2d 1003, 1016-17 (2d Cir. 1964). Specifically, before introducing the individual offenses, the district court explained to the jury that: (1) Goldstein was "charged with various crimes," each called a "count," JA570; (2) the court would "refer to each count by number as it was assigned [in] the charging instrument which is called an indictment," *id.*; (3) "[t]he indictment contains 16 counts," each charging Goldstein "with a different crime," *id.*; and (4) the jury was required to "consider each count separately and return a separate verdict of guilty or not guilty for each count," JA570-71. Against this backdrop, a reasonable juror would have understood the court's repeated instruction that the indictment charges the defendant with violating each substantive offense directly and "*also* alleges that Mr. Goldstein violated Section 2 of Title 18" as a clear charge to address his liability as someone accused of both directly committing each offense "*and* aiding and abetting, counseling, commanding, inducing or procuring such an offense." *E.g.*, JA584-85 (emphasis added).

The district court's statement that the indictment was "not evidence" does not establish otherwise. JA570. The purpose of that standard instruction is to ensure that a jury does not interpret a court's reference to an indictment as substantive evidence of a defendant's guilt—not to suggest the jury should ignore the indictment's identification of the charges at issue. *See, e.g.*, *Press*, 336 F.2d at 1016-17 ("courts justifiably have been concerned that overemphasis of the indictment may

lead the jury to construe the indictment as evidence of guilt of the accused"); *cf. United States v. Garcia*, 562 F.2d 411, 416 (7th Cir. 1977) (affirming jury instructions that explained the indictment was "not evidence of any kind against a defendant" but instead "identifie[d] what it is that the grand jury says you should decide with respect to whether or not the defendants are guilty or innocent"). Indeed, the instruction identified here itself confirmed the indictment's role as guide, explaining that the indictment was "not evidence" but *instead* "a statement of charges." JA570. A jury instructed, as Goldstein's was, that its job was to "consider each count separately and return a separate verdict of guilty or not guilty for each" would thus naturally—and correctly—assume that its job was to adjudicate that "statement of charges," JA570-71, which in this case expressly included an aiding-and-abetting theory of liability at every turn.[2]

---

[2] The district court also defended its instructions on the ground that there was "[in]sufficient evidence to convict Mr. Goldstein under a Section 2(a) liability theory." JA657. If that were true, the proper course would have been to omit any reference to aiding and abetting altogether—as Goldstein expressly requested, JA536-37. *See, e.g.*, *United States v. England*, 966 F.2d 403, 408 (8th Cir. 1992) (while "reading and submitting the indictment to the jury is not improper *per se*," "[w]here the government has not presented evidence supporting allegations in the indictment … the 'better course' is to redact those allegations from the indictment" (citation omitted)); *cf. United States v. Coward*, 669 F.2d 180, 183-84 (4th Cir. 1982) (affirming district court's decision "to strike surplusage from the indictment" when reading it to the jury).

### B. The District Court's Aiding-and-Abetting Instructions Were Deficient.

A defendant may be convicted as an aider and abettor only if jurors are properly instructed on the essential elements of accomplice liability. Yet, while the charging instructions here invited the jury to convict Goldstein as an accomplice on each substantive offense charged, they failed to identify the essential elements of aiding-and-abetting liability. That failure rendered the instructions fatally deficient.

To convict a defendant on an aiding-and-abetting theory of liability, a jury must make three core findings.

*First*, the jury must find a guilty principal. *See, e.g.*, *United States v. Horton*, 921 F.2d 540, 543-44 (4th Cir. 1990). Absent evidence establishing that a principal is guilty of the underlying offense, a defendant cannot be found to have aided and abetted the principal. *See, e.g.*, 2 Wayne R. LaFave, *Substantive Criminal Law* § 13.3(c) (3d ed. 2018) ("[T]he guilt of the principal must be established at the trial of the accomplice as a part of the proof on the charge against the accomplice. If the acts of the principal … are found not to be criminal, then the accomplice may not be convicted."); *United States v. Singh*, 532 F.3d 1053, 1057-58 (9th Cir. 2008)

(requiring "that someone committed the underlying substantive offense" (citation omitted)).[3]

*Second*, the "the jury must find that the defendant … took an affirmative act in furtherance of the underlying offense." *United States v. Odum*, 65 F.4th 714, 721 (4th Cir. 2023). An omission is generally not enough to establish aiding-and-abetting liability. *See* Andrew Manuel Crespo & John Rappaport, *Criminal Law & the American Penal System: Cases & Context* 516-25 (2025) [hereinafter Crespo & Rappaport] (discussing "the law of *omissions*" as "an important conceptual baseline regarding" accessory liability). Instead, the jury must find that the defendant actively "participated in the criminal venture" at issue. *United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996) (en banc) (citation omitted); *see also, e.g.*, *United States v. Lamborn*, 159 F.4th 230, 244 (4th Cir. 2025) ("There must be evidence of active participation: a defendant's 'mere presence at the scene of the crime' is insufficient." (quoting *United States v. Love*, 767 F.2d 1052, 1059 (4th Cir. 1985))).[4]

---

[3] This requirement holds even though "the government need not prove the actual identity of the principal"—e.g., if multiple individuals were involved in a murder and there is "no direct evidence of who delivered the fatal blow." *Horton*, 921 F.2d at 543-44. The government still must "prove that the substantive offense ha[s] been committed by *someone* and that the defendant aided and abetted him." *Id*. (emphasis added) (quoting *United States v. Campa*, 679 F.2d 1006, 1013 (1st Cir. 1982)).

[4] The law recognizes a "narrow set of circumstances" in which "some people have special duties to act in order to protect others," such that "criminal liability can attach when a person fails to take certain action." Crespo & Rappaport, *supra*, at 513; *see*

*Third*, "the jury must find that the defendant … [acted] 'with the intent of facilitating the offense's commission.'" *Odum*, 65 F.4th at 721 (quoting *Rosemond v. United States*, 572 U.S. 65, 71 (2014)). While historically some courts "required only *knowledge* of the principal's crime," over time, most jurisdictions "came to insist on intent." Crespo & Rappaport, *supra*, at 543 (explaining that "a majority of states require [intent] today"); *see also* 2 LaFave, *Substantive Criminal Law* § 13.2(c) (describing "the usual requirement that the accomplice must intentionally assist or encourage" the principal). Moreover, in addition to intending to provide aid or encouragement, "[t]he prevailing view is that the accomplice must also have the mental state required for the crime of which he is to be convicted on an accomplice theory." 2 LaFave, *Substantive Criminal Law* § 13.2(c). Under this approach, one who intentionally aids a burglar's breaking and entering but who does not intend to commit a felony within the premises would not be guilty as an accomplice to burglary, because he does not "share[] in the principal['s] criminal intent." *United States v. Winstead*, 708 F.2d 925, 927 (4th Cir. 1983).

Because a jury is required to make each of those findings, a defendant cannot be convicted as an accomplice unless these elements are included in the jury charge. To be sure, aiding and abetting is a theory of liability, not a standalone offense. *See*

---

*also id.* at 525 (describing "at least four situations in which" such liability may arise (quoting *Jones v. United States*, 308 F.2d 307, 310 (D.C. Cir. 1962))).

Crespo & Rappaport, *supra*, at 515. Courts have nonetheless long made clear that—consistent with the general requirement that a jury charge identify all essential elements of each offense alleged, *see supra* pp. 6-7—jury instructions that incorporate aiding and abetting as a path to liability must enumerate the elements of that theory, *in addition* to the elements of the underlying offense.

For example, around the time that the Supreme Court established definitively that questions of law fall within the province of courts, not juries, *see supra* p. 5, it held that a trial judge erred in failing to identify the elements of aiding-and-abetting liability in a murder case where the defendant was present and allegedly encouraged a shooting but did not "take any part in the physical struggle." *Hicks v. United States*, 150 U.S. 442, 446-49 (1893). While the judge invited the jury to consider whether the defendant "aided, abetted, or advised" the shooting, he failed "to instruct the jury that the acts or words of encouragement and abetting must have been used by the accused with the intention of encouraging and abetting." *Id.* at 448-49.

The Supreme Court also affirmed the point more recently, rejecting jury instructions on aiding and abetting a violation of 18 U.S.C. § 924(c) because they failed to "convey" that a defendant must have "chosen, with full knowledge, to participate in the illegal scheme." *Rosemond v. United States*, 572 U.S. 65, 79 (2014). And this Court has applied the Supreme Court's precedent in holding that

the failure to instruct "the jury as to the necessity of intent in proving aiding and abetting" constitutes plain error. *Odum*, 65 F.4th at 721-22.

By contrast, instead of enumerating the elements that the jury was required to find to convict under Section 2(a), the district court here simply recited the statutory text. But recitation of a criminal statute alone is insufficient to properly instruct a jury on a charge, at least where the statute does not itself enumerate all essential elements of the relevant offense. *See, e.g.*, *Head*, 641 F.2d at 180 (district court erred by "reading … 18 U.S.C. § 201 to the jury rather than setting forth the separate elements of the offense"); *cf.* Wright & Miller § 487 ("The test is whether the instruction leaves no doubt as to the circumstances under which the crime can be found to have been committed."). And importantly, the text of Section 2(a) does not identify the elements of aiding and abetting; it merely asserts that someone who "aids, abets, counsels, commands, induces or procures [an offense's] commission[] is punishable as a principal." 18 U.S.C. § 2(a). The text of Section 2(a) is thus an inadequate aiding-and-abetting instruction, as this Court confirmed in holding that the district court in *Odum* plainly erred despite having similarly "'read directly from' 18 U.S.C. § 2." 65 F.4th at 720.

Nor did any other part of the jury charge save the district court's deficient Section 2(a) instructions. At a minimum, there is no way the charge as a whole communicated the requirement that the jury find a guilty principal. That requirement

follows from the fact that aiding-and-abetting liability is "*derivative*, with the accomplice's guilt rising and falling with that of the principal." Crespo & Rappaport, *supra*, at 555-56. This Court has described the relationship simply: "By definition accessories cannot alone commit a crime. At least one principal is essential[.]" *United States v. Walden*, 464 F.2d 1015, 1020 (4th Cir. 1972). Yet the only reference to a "principal" anywhere in the jury charge here was in the district court's recitations of Section 2, which simply states that an accomplice is "punishable *as* a principal." 18 U.S.C. § 2(a) (emphasis added). But if anything, reciting that text alone, without additional explanation, only compounded the problem: To say that an accomplice is "punishable as a principal," without explaining that a *separate* guilty principal must be found to have committed the underlying offense, suggests—incorrectly—that an aider and abettor's guilt can stand alone. *Cf. Odum*, 65 F.4th at 721 (instructions must state the controlling law "without misleading or confusing the jury" (quoting *Noel v. Artson*, 641 F.3d 580, 586 (4th Cir. 2011))).[5]

---

[5] While Goldstein was charged with aiding or assisting in the filing of a false tax return under 26 U.S.C. § 7206(2), that standalone substantive offense does not independently require that the jury find a guilty principal. *See* JA593-94 (identifying the elements as requiring proof "that Mr. Goldstein advised or assisted in the preparation of a tax return that was subsequently filed," "that the return was false as to any material matter," and "that Mr. Goldstein acted willfully").

## III. The Multi-Actor Fact Pattern Invited an Aiding-and-Abetting Verdict.

This is a case where deficient aiding-and-abetting instructions could easily have affected the jury's verdict. All of the charges implicated the conduct of third parties, including Goldstein's accountants and assistants. And the government introduced extensive evidence at trial regarding Goldstein's interactions with those third parties.

That multi-actor fact pattern presented a substantial risk of adjudicatory drift by the jury—a quiet (and perhaps unwitting) shift from properly assessing Goldstein's guilt on an individual basis to instead assuming guilt through association. *Cf. Scales v. United States*, 367 U.S. 203, 224 (1961) ("In our jurisprudence guilt is personal[.]"). When jurors are presented with evidence of misconduct involving multiple parties, there is always a danger that they paint with a broad brush. Justice Robert Jackson described that risk vividly in a conspiracy case decades ago, observing that "[i]t is difficult for [a defendant] to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together." *Krulewitch v. United States*, 336 U.S. 440, 454 (1949) (Jackson, J., concurring).

A similar concern applies with respect to aiding and abetting. In the face of evidence establishing misconduct implicating a group of individuals, a jury might find the named defendant guilty as an accomplice based on his general connection

to or association with that misconduct, without parsing whether that connection satisfied the carefully delineated legal standards for imposing accessory liability. *Cf.* Crespo & Rappaport, *supra*, at 591-92 (describing "the ever-present risk [in the conspiracy context] … that the jury will not be able to parse out who was really in an agreement with whom").

Properly administered jury instructions on accomplice liability help prevent that type of drift by requiring jurors to affirmatively find elements the law deems reflective of individual culpability. *See, e.g.*, *United Bhd. of Carpenters & Joiners of Am. v. United States*, 330 U.S. 395, 411 (1947) (defendants were "entitled to have their participation weighed by a jury under an instruction explaining the circumstances under which [the relevant statute] permits acts of other individuals or of associations or of organizations in labor disputes to create personal liability"). For a defendant's connection to misconduct to rise to the level of "aiding and abetting," our law requires that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, [and] that he seek by his action to make it succeed." *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938) (Hand, J.). Instructing a jury of this liability standard—and the accompanying requirements of a guilty principal and an affirmative act—ensures that any aiding-and-abetting conviction falls within "the accepted limits of imputation of guilt" in cases where the questionable conduct of multiple actors might

otherwise lead a jury to damn the lot of them, without ever finding the precise elements of liability required for any one. *Scales*, 367 U.S. at 225 n.17.

Because those essential instructions were never delivered in this case, the jury's guilty verdict could rest on an improper finding of aiding-and-abetting liability, motivated by the multi-actor fact pattern. The jury may have "become[] mired in a factual morass, unable to draw the appropriate legal conclusions based on" the evidence presented. *Lewis*, 53 F.3d at 34. For instance, because they were read Section 2(a)'s text but never told its elements, the jurors could have reasoned that Goldstein should be convicted for "aiding and abetting" the general misconduct of one of the many third parties involved—including his accountant or assistants—without ever finding beyond a reasonable doubt that one of those third parties *actually committed* all of the elements of the underlying substantive offense. For this reason, had the jury been properly instructed—informed that it could not find Goldstein guilty as an aider and abettor without first finding a guilty principal—its verdict may well have been different. That possibility requires reversal.

## CONCLUSION

For the foregoing reasons, *amici curiae* respectfully urge this Court to vacate the judgment of conviction and remand for a new trial.

September 17, 2026

Respectfully submitted,

/s/ Hilary Ledwell

Hilary Ledwell
Gavan W. Duffy Gideon
JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001
(202) 639-6000
hledwell@jenner.com
gavan.gideon@jenner.com

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 4,987 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: September 17, 2026

/s/ Hilary Ledwell
Hilary Ledwell
*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2026, I caused the **Brief of Professors Andrew Manuel Crespo, Joshua Dressler & Carol Steiker as *Amici Curiae* in Support of Defendant-Appellant and Reversal** to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in this case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

Dated: September 17, 2026

/s/ Hilary Ledwell
Hilary Ledwell
*Counsel for Amici Curiae*